UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-62034-ALTMAN/Strauss

**RICO RIVERA,**

    *Plaintiff*,

*v.*

**SERGEANT MARIN R,** *et al.*,

    *Defendants*.

_____/

## ORDER ADOPTING REPORT AND RECOMMENDATION

Our Plaintiff, Rico Rivera, alleges that, on February 5, 2023, he called the Coconut Creek Police Department, "seeking intervention after his ex wife [ ] continuously struck him, ultimately with a weapon, in the presence of [his minor child]." Amended Complaint [ECF No. 10] ¶ 16. Rivera, acting *pro se*, claims that, "upon arrival [of] [t]he Defendants"—officers in the Coconut Creek Police Department—he "showed [D]efendant Rodriguez and [D]efendant Blackwood a video that was recorded showing his ex wife committing battery[.]" *Id.* ¶¶ 18–19. "After witnessing the footage," the Plaintiff continues, "[O]fficer Rodriguez asked Rivera what he would like to do about it. The Plaintiff affirmatively stated that he wanted to file charges against his wife . . . . for the battery[.]" *Id.* ¶¶ 20, 22. According to Rivera, "Officer Blackwood immediately interjected and told the Plaintiff that he could not file any charges for the battery." *Id.* ¶ 21. "Officer Blackwood," Rivera alleges, "then proceeded to tell the Plaintiff to leave his Residence and maliciously threatened that if he did not, they would 'fabricate evidence and make it to a point' to support a false arrest [of] Domestic Violence against the [P]laintiff." *Id.* ¶ 23. "Defendant Blackwood, Defendant Garvey, and Defendant Kohlhorst further tried to provoke fear by making threats of taking the Plaintiff's daughter into custody[.]" *Id.* ¶ 24. "The

[D]efendants did not arrest the [Plaintiff's] ex wife"—but, instead (in the Plaintiff's words), "informed her that if she goes to file for a restraining order that they will 'help her.'" *Id.* ¶¶ 30–31.

Following this incident, the Plaintiff claims that Officer Rodriguez—"supported by all of the [D]efendants"—"wrote a false police report to cover up [the Defendants'] actions," resulting in Rivera being "served a temporary injunction[.]" *Id.* ¶¶ 34–35. Rivera adds that, as a result of the Defendants' "conspir[acy]" with his ex-wife, *see id.* ¶ 32, he was "forced to leave his home and separated from [his child] for six months," *id.* ¶ 35. "All claims against the [P]laintiff were ultimately dismissed at [a civil] trial" on August 30, 2023. *Id.* ¶ 36.[1]

Rivera now asserts ten claims against the Defendants: 1) Violation of Equal Protection; 2) Failure to Intervene; 3) "Liability in Connection of Another Supervisory Official"; 4) "Falsifying Police Report and Other Evidence"; 5) "Conspiring with a Private Individual to Interfere with Civil Rights"; 6) "Fourth Amendment: Continuing Seizure"; 7) "Fourth Amendment: Excessive Force"; 8) "Fourteenth Amendment: Malicious Prosecution as Undue Process"; 9) "Fourteenth Amendment: Due Process Failure to Arrest"; and 10) "Fourteenth Amendment: Due Process Disclosure of Exculpatory Evidence." *See* Amended Complaint at 5–16. The Defendants have moved to dismiss the first nine counts of the Plaintiff's Amended Complaint. *See* Motion to Dismiss [ECF No. 19]; *see also* Report and Recommendation (the "R&R") [ECF No. 43] at 3 ("The Motion seeks dismissal of Counts 1-9, but it does not address Count 10.").

On May 16, 2024, Magistrate Judge Jared M. Strauss issued a report and recommendation, in which he recommended that we grant in part and deny in part the Motion to Dismiss. *See* R&R at 18. Specifically, Judge Strauss suggested that "Counts 2–9 of the Amended Complaint should be

---

[1] We take the following facts from the Plaintiff's Amended Complaint and accept them as true for purposes of this Order.

2

**DISMISSED**, but the Motion should be denied as to Count 1." *Ibid.*[2] Magistrate Judge Strauss also issued the following warning:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

*Id.* at 6. The Plaintiff timely objected to the R&R. *See* Plaintiff's Written Objections to Report and Recommendations (the "Objections") [ECF No. 47]. The Defendants did not object. *See generally* Docket.

## THE LAW

District courts must review *de novo* any part of a magistrate judge's disposition that has been properly objected to. *See* FED. R. CIV. P. 72(b)(3). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

---

[2] *See also* R&R at 4–5 ("In Count 1, Plaintiff brings a § 1983 claim premised upon Defendants' alleged violation of Plaintiff's right to equal protection under the Fourteenth Amendment . . . . Although Plaintiff alleges that Defendants discriminated against him because he is male, Defendants' Motion treats Count 1 as if it only alleges a class-of-one equal protection claim rather than discrimination based on Plaintiff's status in a protected class . . . . By failing to address Plaintiff's allegations that Defendants discriminated against him because he is male, Defendants have failed to satisfy their burden of showing that Count 1 of the Amended Complaint is subject to dismissal.").

3

When a party timely objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also Leonard v. Polk Cnty. Sheriff's Dep't*, 2019 WL 11641375, at *1 (M.D. Fla. Apr. 16, 2019) (Jung, J.). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). "Those portions of a magistrate judge's report and recommendation to which no objection has been made are reviewed for clear error." *Ibid.*

Although "*pro se* pleadings are held to a more lenient standard than pleadings filed by lawyers," *Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, 974 (11th Cir. 2012), that leniency "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action," *GJR Inv., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1989). *Pro se* litigants "cannot simply point to some perceived or actual wrongdoing and then have the court fill in the facts to support their claim . . . . [J]udges cannot and must not 'fill in the blanks' for *pro se* litigants; they may only cut some 'linguistic slack' in what is actually pled." *Hanninen v. Fedoravitch*, 2009 WL 10668707, at *3 (S.D. Fla. Feb. 26, 2009) (Altonaga, J.) (cleaned up).

## ANALYSIS

The Plaintiff objects to Judge Strauss's recommendation that we dismiss Counts 2, 3, 6, and 7 of the Amended Complaint. *See* Objections at 4–8. We'll address—and reject—his objections in turn.

### I. Count 2: Failure to Intervene

In Count 2 of the Amended Complaint, the Plaintiff alleges that the Defendants—Rodriguez, Kohlhorst, Garvey, Wooley, Brewster, and Cross—are "liable under § 1983" because they were "present and observed the threat made by [O]fficer Blackwood" but failed to "intervene[ ] to stop or

4

correct the misconduct they observed[.]" Amended Complaint ¶ 57. "Instead," the Plaintiff claims, "they condoned, agreed and endorsed their fellow officer with Defendants Garvey and Kohlhorst making further threats to the Plaintiff." *Ibid*. He adds that "[a]ll of the Defendants knew excessive force was used [and] that the [P]laintiff was being unequally treated," but they "all either reinforced the misconduct or simply stood there in agreement[.]" *Id.* ¶ 58.

Judge Strauss recommended that we dismiss Count 2 because it "fails to state a claim[.]" R&R at 8. Specifically, he found that the Plaintiff "fails to include factual allegations showing that any officer used *any force*. And there is no 'attendant obligation to intervene' when excessive force is not used." *Ibid.* (quoting *Baker v. City of Madison, Ala.*, 67 F.4th 1268, 1281 (11th Cir. 2023)).

On *de novo* review, we agree. The Eleventh Circuit has made plain that, where one officer "did not violate [a plaintiff's] right to be free from excessive force," an observing officer has "no attendant obligation to intervene." *Crenshaw v. Lister*, 556 F.3d 1283, 1294 (11th Cir. 2009); *see also Baker*, 67 F.4th at 1281 (holding that "Baker's failure-to-intervene claim fails" because "Officer Nunez's use of the taser did not constitute excessive force, [so] Officer Hose had no obligation to intervene"); *cf. Blake v. Leavins*, 2023 WL 9316854, at *4 (N.D. Fla. Nov. 1, 2023) (Bolitho, Mag. J.), *report and recommendation adopted*, 2024 WL 200898 (N.D. Fla. Jan. 18, 2024) (Rodgers, J.) ("Because there was no underlying use of excessive force, there was no obligation for any [d]efendant to intervene. Thus, [p]laintiff has failed to state a plausible failure to intervene claim against [d]efendants."). Similarly, here, the Plaintiff fails to allege that the Defendants used physical force against him—much less excessive force—so his excessive-force, failure-to-intervene claim necessarily fails. *See generally* Amended Complaint.

Resisting, Rivera argues that "Failure to Intervene claims" only "*generally* arise in the realm of excessive force," and that "Police Officers [cannot] turn a blind eye to the rest of the constitution and other constitutional violations . . . simply because they didn't observe their fellow officer draw blood or commit some other physical atrocity." Objections at 4 (emphasis in original). Rivera now insists

5

that the Defendants "had the duty to intervene in stopping [his ex-wife] from committing fraud upon the courts and obstructing justice with false information," the "duty to intervene in stopping their fellow officers from perjuring and submitting 2 falsified documents," and the "duty to intervene and keep the other officers from punishing Rivera and his daughter[.]" *Ibid.*

While we applaud this creative argument, it's just not viable, since the "Eleventh Circuit does not recognize a duty to intervene in constitutional violations which occur outside of the excessive force context." *Montanez v. Celaya*, 49 F. Supp. 3d 1010, 1019 (M.D. Fla. 2014) (Covington, J.); *see also Ireland v. Prummell*, 53 F.4th 1274, 1301 (11th Cir. 2022) ("[A] claim for failure to intervene *requires* an act of excessive force by the perpetrating officer in the first instance, which . . . did not happen here." (emphasis added)); *Livers v. Schenck*, 700 F.3d 340, 360 (8th Cir. 2012) ("Though other circuits have recognized a duty to intervene outside of the excessive force context, . . . the Eleventh Circuit [has] refused to find a clearly established duty to intervene to stop other constitutional violations[.]"); *O'Keefe v. Patterson*, 2019 WL 652509, at *9 (M.D. Fla. Feb. 15, 2019) (Jung, J.) ("Plaintiff sets forth no decision from the U.S. Supreme Court, U.S. Court of Appeals for the Eleventh Circuit, or the Florida Supreme Court that clearly establishes that a non-supervisory officer's failure to intervene to prevent another officer's unconstitutional conduct violates a person's constitutional rights outside the excessive force context." (cleaned up)); *Tarantino v. Citrus Cnty. Gov.*, 2014 WL 4385550, at *11 (M.D. Fla. Sept. 4, 2014) (Corrigan, J.) ("The [c]ourt has found no United States Supreme Court or Eleventh Circuit authority, and the parties have cited none, in which a section 1983 action for failure to intervene survived based on a theory not involving the use of excessive force."); *Pinto v. Collier*, 2020 WL 2219185, at *10 (M.D. Fla. May 7, 2020) (Barber, J.) ("Because [the plaintiff] cannot state a claim for relief as to a failure to prevent the violation of other constitutional rights outside of excessive force, he cannot sustain this claim against Sheriff Rambosk in his individual capacity."). We likewise have

found no Supreme Court or Eleventh Circuit precedent (and the Plaintiff points us to none) in which a § 1983 claim for failure to intervene survived in a context beyond excessive force.

In this case, as we've said, the Plaintiff hasn't given us *any* facts suggesting that *any* officer used *any* physical force against him. *See generally* Amended Complaint. Accordingly, we **OVERRULE** this objection and **GRANT** the Motion to Dismiss Count 2 without leave to amend.[3]

### II.     Count 3: "Liability in Connection of Another Supervisory Official"

Count 3 of the Amended Complaint asserts a supervisory-liability claim against Sergeant Marin only. Here is Count 3 in its entirety:

> Sgt. Marin was, in full police uniform, present at the scene and was the Senior officer and Supervisor over all of the other [D]efendants during this incident. Sgt. Marin directly observed his subordinates [sic] misconduct and therefore had actual knowledge of his subordinates [sic] actions that violated the [Plaintiff's] Constitutional Rights. Sgt. Marin had the duty to and the ability to interfere and correct his subordinates to prevent the Constitutional violations and prevent any furtherance thereof. Sgt. Marin did neither. Instead he acquiesced in the violations by simply standing there and agreeing, neither stopping or correcting his subordinates, turning a blind eye, thus furthering and encouraging the police misconduct and all claims stated in this complaint.

Amended Complaint ¶¶ 61–64.

In his R&R, Judge Strauss found that:

> Count 3, which alleges supervisory liability against Sergeant Marin, should be dismissed. "[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."

---

[3] Rivera asks us, in the alternative, for leave to amend Count 2. *See* Objections at 4. If Rivera wanted to amend Count 2 to add facts supporting a claim of excessive force, then perhaps we'd grant him leave to amend. In his Objections, however, Rivera essentially concedes that the Defendant-officers did *not* use excessive physical force. *See ibid.* (arguing that failure-to-intervene claims do not "*only or strictly* arise in the realm of excessive force" and offering several other theories for "the duty to intervene" (emphasis in original)). And, as we'll explain later in the context of Count 7 ("Fourth Amendment: Excessive Force"), the Plaintiff now acknowledges that he did not understand "that excessive force in actuality means [ ] excessive physical force." *Id.* at 6. For these reasons, we find that any emendation to Count 2 would be futile, so we'll decline the Plaintiff's request to amend. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162–63 (11th Cir. 2019) ("'[T]he District Court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.").

7

> *Myrick v. Fulton Cnty., Georgia*, 69 F.4th 1277, 1297 (11th Cir. 2023) (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)). "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Id.* (quoting *Cottone*, 326 F.3d at 1360).
>
> In the Amended Complaint, Plaintiff does not appear to allege personal participation by Sergeant Marin or a causal connection between Sergeant Marin's actions and the alleged constitutional deprivation. Rather, in Count 3, Plaintiff merely alleges that Sergeant Marin was present at the scene, was the supervisor of the other Defendants who were present, and "acquiesced in the violations by simply standing there and agreeing, neither stopping or correcting his subordinates, turning a blind eye . . . ." [DE 10] ¶¶ 61–64. What Plaintiff appears to be alleging is that Sergeant Marin failed to intervene just like the Defendants who are the subject of Count 2 . . . . However, as discussed in the preceding section, Plaintiff has failed to state a § 1983 claim based on any failure to intervene. At any rate, by not alleging – in any manner – personal participation or a causal connection, Plaintiff has failed to adequately allege supervisory liability as to Sergeant Marin.

R&R at 8–9.

The Plaintiff "objects to the dismissal of Count 3" and asks us to "allow amending where necessary[.]" Objections at 5. He argues that "Marin had the duty to intervene when observing his subordinates engaging in discriminatory behavior, unequally protecting the laws, falsify[ing] evidence and instructing a perpetrator of violence to commit fraud upon the courts in order to frame an innocent victim of domestic violence as if he was the perpetrator." *Ibid.* He also insists that he *did* allege "personal participation and a [causal] connection" in his Amended Complaint. *Ibid.* In his words: "As [Sergeant Marin] was the supervisor on scene who signed off and approved the known lie [causally] connects him to the deprivation of equal protection. And his turning a blind eye to it, his inaction, is an action, a deliberate one." *Ibid.* (errors in original).

To the extent Rivera is trying to amend his pleading through his Response (or through his Objections), that's not permissible. *See Tsavaris v. Pfizer, Inc.*, 2016 WL 375008, at *3 (S.D. Fla. Feb. 1, 2016) (Moore, C.J.) ("A plaintiff [ ] cannot amend the complaint in a response to a motion to dismiss, for a court's review on dismissal is limited to the four corners of the complaint."); *Starks v. United*

8

*States*, 2010 WL 4192875, at *3 (S.D. Fla. Oct. 19, 2010) (Middlebrooks, J.) ("Arguments that are not raised before a magistrate judge cannot be raised for the first time as an objection to a report and recommendation."). In any event, while we agree with Judge Strauss that the Amended Complaint currently fails to state a claim for supervisory liability against the Defendant Sergeant Marin, we'll allow the Plaintiff to amend Count 3 to clarify whether Sergeant Marin personally participated in the allegedly unconstitutional conduct *or* whether there was a causal connection between Sergeant Marin's actions and the alleged constitutional deprivations. *See Myrick v. Fulton Cnty., Ga.*, 69 F.4th 1277, 1297 (11th Cir. 2023) ("[S]upervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." (cleaned up)). We, therefore, **GRANT** the Motion to Dismiss Count 3 without prejudice and with leave to amend.

### III. Count 6: "Fourth Amendment: Continuing Seizure"

In Count 6 of his Amended Complaint, the Plaintiff alleges that he "suffered pre trial deprivation under the 4th amendment."[4] Amended Complaint ¶ 96. Specifically, Rivera claims that he was "continually seized for a period of nearly seven months before his innocence was proven and he was allowed contact with his daughter[.]" *Id.* ¶ 98. Judge Strauss recommended that we dismiss Count

---

[4] The Plaintiff also alleges, in Count 6, that his "'fair trial' rights were violated when [the Defendants] did not disclose exculpatory evidence that would and could have exonerated [him] instead of subjecting him to seven months of undue litigation." Amended Complaint ¶ 96. In his R&R, Judge Strauss found that, "[t]o the extent that Plaintiff is alleging that the failure to disclose exculpatory evidence somehow violated his right to a fair trial, he does not explain how that is so. And it is unclear how any such constitutional violation could exist given that Plaintiff was never criminally prosecuted." R&R at 14 n.10. The Plaintiff's only objection to this portion of the R&R is that "it [is] at least partially self explanatory how his fair trial rights were violated." Objections at 5. But that's not true. For one thing, the Defendant wasn't criminally prosecuted, so we're not sure what exculpatory *civil* obligations he's pointing to here. For another, the Plaintiff *won* the civil case against him—so it's not at all clear that any such violation (if there was one) damaged him. In any event, as we've said many times, "conclusive [or] general objections need not be considered by the district court." *Tardon*, 493 F. Supp. 3d at 1209. Rivera had an affirmative obligation to tell us how his trial rights were violated. Since he's failed to do that, we overrule his "objections" to this portion of the R&R.

9

6 because "the Amended Complaint fails to allege that Plaintiff was actually 'seized[.]' . . . . Plaintiff does not allege that he was arrested or that Defendants restrained his freedom of movement." R&R at 14. Because the "Defendants never arrested or otherwise seized Plaintiff in the first place," Judge Strauss concluded, "Count 6 must be dismissed." *Id.* at 14.

> In his Objections, the Plaintiff says this:
>
> It should be considered that the plaintiff was the actual victim of violence and with that said, he should not have stood trial at all. Nevertheless he stood trial for domestic violence from the position as if he committed domestic violence against the person who actually did. And though Domestic Violence technically it is considered civil and not criminal prosecution of such, being found guilty of domestic violence does and could have very well sent the Plaintiff to jail *with the criminals*.
>
> It comes with that built in sanction and a variety of other freedom restricted sanctions including restricting access to his home, children and property. All withstanding, when Fuentes and Arenals investigation concluded and officer Blackwood was sanctioned for his misconduct and when they concluded that the plaintiff did not engage in a combat with his ex wife (which they ultimately modified part of their police report removing the ex wife as a victim—and replacing it with only the plaintiff and his daughter) at this point it too should have been disclosed that the officer's actions were incorrect and that the plaintiff and his daughter were actually the victims of violence on 02/05/2023 and should not be standing trial for the incident. Even if they were to disguise the officers actions as mistake, which it clearly was not, they were obligated to let the court know that he had been deceived. And they concluded it 3 months before the domestic violence trial was complete. Arenal waited for the plaintiff to face trial and only signed off on the report a few days after the trial ended somewhat favorably for the plaintiff.

*Id.* at 5–6 (errors in original).

While we understand that the Plaintiff is frustrated with the circumstances of his domestic dispute, his Objections really have nothing to do with searches and seizures under the Fourth Amendment. And we agree with Judge Strauss that the Plaintiff *never* alleges (in his Amended Complaint) "that he was arrested or that [the] Defendants restrained his freedom of movement." R&R

10

at 14.[5] "Rather, what Plaintiff seems to be alleging is that Defendants' actions caused his wife to seek (and, at least temporarily, obtain) a restraining order against him on false grounds." *Ibid.*; *see also* Amended Complaint ¶ 35 ("The Plaintiff was served a temporary injunction and was forced to leave his home and separated from [his child] for six months. He also had to litigate the falsely supported claims that included two days of trial."); *id.* ¶ 83 ("The Defendants provided significant encouragement, overtly and covertly, to the [Plaintiff's] ex wife by telling her to file for a false domestic violence injunction stating '*go file for a restraining order and they would help her.*'" (emphasis in original)); *id.* ¶ 134 (conceding that he "suffered pre trial deprivation" in the form of "being served an injunction"). Since these allegations have nothing to do with any state-sanctioned search or seizure of Rivera's person or property, he's failed to state a claim under the Fourth Amendment. Indeed, "[u]nder the Fourth Amendment, a person is seized only when, by means of physical force or a show of authority, his freedom of movement is restrained so that, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Knight through Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 822 (11th Cir. 2017) (cleaned up)). Because Rivera hasn't advanced any such allegations here, we **OVERRULE** this objection and **GRANT** the Motion to Dismiss Count 6.

### IV.  Count 7: "Fourth Amendment: Excessive Force"

Finally, the Plaintiff "objects to the dismissal of Count 7[.]" Objections at 6. In Count 7 of the Amended Complaint, the Plaintiff alleges that the Defendants violated the Fourth Amendment by "direct[ing] . . . excessive force towards the [P]laintiff" during their house call on February 5, 2023. Amended Complaint ¶ 107. In his R&R, Judge Strauss concluded that Count 7 "should be dismissed"

---

[5] Rivera admits, in his Objections, that he "wasn't arrested" but says that he *was* "subjected to nearly 7 months under the grips of the judicial system." Objections at 5. But being a party to civil litigation, however unpleasant, isn't a violation of the Fourth Amendment.

because (again) "it fails to include a single factual allegation showing that the Defendants used *any force* whatsoever against Plaintiff." R&R at 14. Rivera objects as follows:

> Plaintiff objects to the dismissal of count 7 On the grounds that it should be dismissed without prejudice and permitted to amend[.] At the beginning of this complaint the plaintiff was unclear that excessive force in actuality means is excessive physical force. The plaintiff alleged that at all and in all actions that the officers were acting in malice. Because he was a victim of domestic violence, he should not have been subjected to any of the treatment outlined in his complaint. Because he was subjected to such punishment, for no reason the punishment is unacceptable due to the suffering and humiliation it inflicted on the plaintiff he feels that count 7 should be dismissed without prejudice to amend the complaint under the 8th amendment as cruel and unusual punishment.

Objections at 6 (errors in original).

As we've hinted, the Plaintiff appears to be conceding that the Defendants didn't use *physical* force (excessive or otherwise) in any of their interactions with him. He also seems to be abandoning his excessive-force claim under the Fourth Amendment. *See ibid.* ("[C]ount 7 should be dismissed without prejudice . . ."). He, instead, asks us for permission to amend his complaint to add an Eighth Amendment claim. *See ibid.* But Rivera hasn't come close to justifying such an amendment. After all, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Sconiers v. Lockhart*, 946 F.3d 1256, 1265–66 (11th Cir. 2020) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992)); *see also Culver by & through Bell v. Fowler*, 862 F. Supp. 369, 371 (M.D. Ga. 1994) ("Whenever police officers stand accused of using excessive physical force in violation of the Cruel and unusual Punishments Clause, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." (quoting *Hudson*, 503 U.S. at 6–7) (cleaned up))). Given that the Plaintiff hasn't alleged that the Defendants used *any* physical force in their interactions with him, *see* Amended

12

Complaint ¶¶ 99–114,[6] the addition of an Eighth Amendment, cruel-and-unusual-punishment claim would be futile, *see Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (holding that a district court need not allow an amendment "where amendment would be futile").

To the extent Rivera wants to advance a non-excessive-force claim under the Eighth Amendment, that amendment would likewise be futile because he never alleges that he was arrested or otherwise confined in any way, that he was convicted of any crime, or that the government (as opposed to his ex-wife) ever punished him. *See generally* Amended Complaint; *see also Whitley v. Albers*, 475 U.S. 312, 318 (1986) ("The Cruel and Unusual Punishments Clause was designed to protect those convicted of crimes, and consequently the Clause applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." (cleaned up)); *United States v. Lovett*, 328 U.S. 303, 324 (1946) (Frankfurter, J., concurring) ("The fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed."). In sum, we **OVERRULE** this objection, decline Rivera's request to amend, and **GRANT** the Motion to Dismiss Count 7.

\*    \*    \*

Having reviewed the R&R, the record, and the applicable law, we hereby **ORDER and ADJUDGE** as follows:

1. The Report and Recommendation [ECF No. 43] is **ACCEPTED and ADOPTED** in full.

---

[6] As we've said, the Plaintiff's Amended Complaint "fails to include factual allegations showing that any officer used *any force*." R&R at 8; *see also* Amended Complaint ¶¶ 104, 108 (alleging that the Defendants "threatened the [P]laintiff with false imprisonment," which "instilled [in him] a fear . . . to return to the City of Coconut Creek"); *see also id.* ¶ 110 (accusing the Defendants of "intimidat[ion]").

2. The Objections [ECF No. 47] are **OVERRULED**.

3. The Motion to Dismiss Count 1 [ECF No. 19] is **DENIED**.

4. The Motion to Dismiss Counts 2, 4, 5, 6, 7, 8, and 9 is **GRANTED** *without* leave to amend.

5. The Motion to Dismiss Count 3 is **GRANTED** *with* leave to amend.

6. By **July 10, 2024**, the Plaintiff shall file a Second Amended Complaint. In that amended complaint, he may proceed *only* with (1) an equal-protection claim (currently Count 1), (2) a claim for supervisory liability (currently Count 3), and (3) his claim for "Fourteenth Amendment: Due Process Disclosure of Exculpatory Evidence" (currently Count 10).

**DONE AND ORDERED** in the Southern District of Florida on June 10, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record
Rico Rivera, *pro se*